# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of:

**Todd Folkerts,**                                                                 Case No. **22-00083-als7**

            Debtor(s)

## MEMORANDUM OF DECISION
**(date entered on docket: December 12, 2022)**

Before the Court is the United States Trustee's (UST) Motion to Dismiss under 11 U.S.C. § 707(b)(3) and Debtor's Objection. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. For the reasons stated the objection is sustained and the Motion to Dismiss is denied.

## BACKGROUND FACTS

Debtor Todd Folkerts (Folkerts) is married and resides in Woodward, Iowa. For over eleven years he has worked as a driver with Bice Transportation. His monthly income is supplemented by an amount he receives in his role as Mayor of Woodward and sporadic security work. His wife is a business banking associate manager at Great Western Bank. Her 18-year-old son lives with them half-time.

On January 26, 2022, Folkerts filed an individual voluntary chapter 7 petition listing primarily consumer debts that his non-filing spouse was not obligated to pay. Included with his original petition and schedules were his Statement of Current Monthly Income (form 122A-1), a Chapter 7 Means Test Calculation (form 122A-2), and a Schedule I income statement. None of these forms included his non-filing spouse's (Wife) income. On February 23, 2022, he filed amendments to each of these forms to add his Wife's income. The UST then timely filed a Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(3)(B) alleging that granting Folkerts a discharge would be an abuse of the bankruptcy system under a totality of Debtor's circumstances because with the addition of his Wife's income he has the ability to make payments to his creditors. Folkerts objects to this characterization because his actual expenses are higher than those relied upon by the UST.

## DISCUSSION

A court may dismiss a case if granting a discharge in a chapter 7 case would be an "abuse" of the bankruptcy system. 11 U.S.C. § 707(b)(1). The concept of abuse is detailed in the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) enacted in 2005. Abuse is presumed if a consumer debtor's Current Monthly Income (Official Form 122-A) and Means Test Calculation (Form 122-B), which deducts standardized expenses, reflects disposable income that exceeds a certain amount set forth in the bankruptcy code. 11 U.S.C. §707(b)(2). The Folkerts' combined household income on the amended form was higher than the median family income in Iowa for a 3-person household. (Docket number 17, Part 2). The Means Test resulted in a negative monthly income amount. Thus, no disposable income was available to pay nonpriority unsecured claims which precluded a designation of presumed abuse under the bankruptcy code.[1]

"Even if a debtor's filing is not presumed abusive upon completion of Form [1]22A, a filing may still constitute abuse if the statutory requirements of 11 U.S.C. § 707(b)(3) are met." *In re Williams*, No. 10-03620-ALS7, 2011 WL 10468090, at *2 (Bankr. S.D. Iowa July 14, 2011). 11 U.S.C. § 707(b)(3) states in relevant part:

> whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider--
> (A) whether the debtor filed the petition in bad faith[2]; or
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

The UST bears the burden the burden of proof by a preponderance of the evidence on abuse under the totality of the circumstances. *In re Booker*, 399 B.R. 662, 665 (Bankr. W.D. Mo. 2009).

The majority of courts, including those in this Circuit, agree that a primary consideration in determining abuse under a totality of the circumstances analysis is a debtor's ability to pay. *In re Honkomp*, 416 B.R. 647, 649 (Bankr. N.D. Iowa 2009). However, the totality of a debtor's

---

[1] Amended Form 122-B includes a payment for a secured loan for a stepdaughter's vehicle that is not paid by either Folkerts or his Wife. There was also an amount subtracted from Wife's income on that form that has no corresponding entry on amended Schedule J or the calculations submitted by the parties. See docket numbers 17-18. The UST did not raise any objection to the Means Test or its results. The Court notes that adjustments to correct these entries could change the amount of available disposable income.

[2] The UST's Motion to dismiss does not raise or rely upon the issue of bad faith.

circumstances is an intensive factual inquiry that is not restricted to that single issue. *In re Gourley*, 549 B.R. 210, 216 (Bankr. N.D. Iowa 2016). For example:

> Whether the bankruptcy filing was precipitated by an unforeseen catastrophic event, such as sudden illness or unemployment; whether the debtor is eligible for relief under another chapter; whether there are non-bankruptcy remedies available to the debtor; whether the debtor can obtain relief through private negotiations; whether the debtor's proposed budget is excessive or unreasonable; whether the debtor has a stable source of future income; whether the debtor could provide a meaningful distribution in a Chapter 13 case; and whether the debtors' expenses could be reduced significantly without depriving them and their dependents of necessities.

*Id.* citing *In re Honkomp*, 416 B.R. at 649-50.

Folkerts' testimony detailed a few reasons why he filed bankruptcy. He had been receiving $1600/month from an annuity provided by the government. Those payments, and his health insurance coverage, were discontinued due to a medical condition. He explained:

> I was given the annuity because diabetes put me out of my military uniform and I had to be in the military to have my full-time job, so I was receiving the annuity and what took away the annuity was making too much money . . . It would have lasted til I was 62 and actually got a full civil service retirement.

Transcript pp. 135-136. In 2021 he was diagnosed with Covid-19 and was unable to work. When he had recovered and intended to return to work, he then suffered a heart attack which further affected his income. In his current job the number of hours he works, and truck loads he delivers have both decreased. Folkerts qualifies to file a chapter 13 case. Folkerts and his Wife both have long-term stable employment. While he is not sure of his future in his second job as the Mayor of Woodward, Folkerts states that he intends to remain available for security work when needed.

Considerable time was spent interpreting facts that fall under the final three factors under the totality of the circumstances: 1) whether the debtor's proposed budget is excessive or unreasonable; 2) whether the debtor could make meaningful distributions in a Chapter 13; and 3) whether the debtor's expenses could be reduced without depriving him or his dependents of necessities. The UST takes the position that many of the monthly obligations that are owed and paid only by Folkerts individually benefit the entire household and his Wife should contribute to a more equitable share of the household's financial responsibilities. This argument focuses on belt tightening for some expenses and splitting most of the household's monthly expenses in proportion to the couple's income.

3

The admitted exhibits include multiple charts and calculations from both parties to support their respective positions on the amount of income available for debt payment in a chapter 13. UST's Exhibit D uses Folkerts' amended Schedule I as a template and compares combined household income to expenses based upon the Internal Revenue Standard Expenses that were effective on the date the bankruptcy petition was filed to determine the household's monthly disposable income. Applying this formula, Exhibit D reflects that $2,900 per month is available to pay Folkerts' nonpriority unsecured debts which amounts to substantial and meaningful payments under a chapter 13 plan. When questioned about Folkerts' ability to avoid payment of the actual expenses for certain necessities, the UST's witness responded that the IRS standards are a starting point for the reasonableness of a monthly budget, and it is a debtor's burden to establish any deviation from those standards and to demonstrate why a higher expense is justified.

Not surprisingly, Folkerts reaches a different conclusion. His amended Schedule I reflects monthly disposable income in the amount of $18. He argues that items such as transportation expenses and some utilities do not lend themselves to belt tightening in the current economy and does not believe those types of expenses can be substantially reduced.[3] So, he contends that using actual monthly household expenditures, although higher than the IRS standard expenses, provide the most accurate method to determine the household's net disposable income.

The UST also suggests that if the Court uses a forward-looking approach additional funds could be available due to an ability to revise the payment terms for some debts, or that stepped-up plan payments could occur after priority and secured obligations had been paid in full, or when the household size is reduced in the future. Along these same lines, Folkerts posits that he does not know whether he will be required to repay all or some portion of the annuity he previously received and whether this will reduce his future income. Attempts to determine this outcome were not successful, and Folkerts' counsel was not optimistic that it might be resolved if payment was required. All these options are simply too speculative at this point to be meaningfully factored into a disposable income analysis.

Both sides seem to agree, at least in theory, how income and expenses should be allocated to determine the disposable monthly income. Essentially, they ask that the Folkerts' family finances be "pooled" to determine available disposable income. This concept has been described as follows:

---

[3] Mr. Folkerts' testimony was credible and honest but there were instances where it became clear he was unaware of certain charges that were associated with the monthly obligations he paid. Specifically, some add-on charges that were recurring on a monthly Apple bill for music services.

> Few courts that advocate a "pooling" approach have looked past the presumption that most married couples live as a unit, pooling their income and expenses" and that "some portion of [the non-debtor's income] is likely to be applied to household expenses, thereby affecting the share of the debtor's income required for support. . . Three arguments advanced for pooling a debtor's and a non-debtor's income are: 1) it avoids difficult evidentiary issues; 2) it prevents abuse by conniving couples; and 3) it prevents a debtor and the non-debtor spouse from unduly burdening the debtor's creditors with the costs of the couple's or the non-debtor spouse's lifestyle.

*In re Boatright*, 414 B.R. 526, 533 (Bankr. W.D. Mo. 2009) (internal citations and quotations omitted). According to Folkerts his Wife does pay some household expenses, such as utilities and food. The record is not clear on the frequency and amounts of these contributions.

A pooling approach must be applied in a manner that does not result in the non-filing spouse compromising his or her finances to pay the debts of the filing spouse. *In re Falke*, 284 B.R. 133, 138 (Bankr. D. Or. 2002) (quoting *In re Attanasio*, 218 B.R. 180, 235 (Bankr. N.D. Ala. 1998) ("Congress expressed no intention that 707(b) should effect a non-debtor or that any non-debtor should be required to tighten his or her belt in order to assist the debtor in paying debts"). As highlighted in *Boatright* under a pooling approach: "Most [courts] simply conclude, without discussion, that a non-debtor spouse's income must be considered in determinations of abuse (or analogous determinations under § 1325(b)(2))." *In re Boatright*, 414 B.R. at 533. In this Court's view, the UST did not appropriately address that concept in its Exhibit D for two reasons: 1) Wife's expenses were not deducted in calculating the income she was expected to contribute to the household expenses; and 2) the IRS standards were applied to Wife's spending to reach the conclusion that there was net disposable income available.

Taking into consideration all the evidence and arguments of the parties the Court prepared its own calculation using Wife's net monthly income (after deducting her personal obligations) and Folkerts' net monthly income (after deducting his alimony and car payment). This method addresses the fundamental issue of what portion of the Wife's income is available for payment of household obligations by backing out her personal expenses from her income before dividing the expenses proportionately. The following chart also includes a comparison with the Standards that took effect in April 2022 and were in place on the date of the hearing.[4]

---

[4] *In re Weixel*, 494 B.R. 895, 903 (B.A.P. 6th Cir. 2013) ("The bankruptcy court's review of the totality of the debtors' circumstances is to be conducted based upon the debtors' circumstances as of the time of the hearing.")

5

|  | Todd |  | Wife |  | Actual | UST Ex. D | IRS |
|---|---|---|---|---|---|---|---|
| Net Wages | 3426 |  | 5034 |  |  |  |  |
| Alimony | 500 |  |  |  |  |  |  |
| Car payment |  |  | 733 |  |  |  |  |
| Son's car payment |  |  | 555 |  |  |  |  |
| Student Loan(s) |  |  | 145 |  |  |  |  |
| Unsecured debt |  |  | 783 |  |  |  |  |
|  |  |  |  |  |  |  |  |
| Available Income to pay HH exp | 2926 |  | 2818 |  |  |  |  |
|  |  |  |  |  |  |  |  |
| Mortgage |  |  |  |  | 1004 |  |  |
| Maintenance, repairs |  |  |  |  | 50 |  |  |
| Electricity, gas |  |  |  |  | 686 |  |  |
| Water, sewer |  |  |  |  | 134 |  |  |
| Telephone, cell, internet, cable |  |  |  |  | 742 |  |  |
| **TOTAL HOUSING/UTILITIES** |  |  |  |  | **2616** | **2091** | **2285** |
|  |  |  |  |  |  |  |  |
| Food |  |  |  |  | 800 | 838 | 903 |
| Household Supplies |  |  |  |  |  | 69 | 74 |
| Clothing, laundry |  |  |  |  | 150 | 191 | 206 |
| Personal care |  |  |  |  | 100 | 72 | 78 |
| Misc. |  |  |  |  |  | 303 | 349 |
| **TOTAL HOUSEHOLD EXPENSES** |  |  |  |  | **1050** | **1473** | **1610** |
|  |  |  |  |  |  |  |  |
| **Medical and Dental** |  |  |  |  | **220** | **204** | **225** |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
| Vehicle ownership |  |  |  |  | 368 | 533 | 588 |
| Vehicle operating |  |  |  |  | 1239 | 402 | 480 |
| **TOTAL VEHICLE EXPENSE** |  |  |  |  | **1607** | **935** | **1068** |
|  |  |  |  |  |  |  |  |
| umbrella |  |  |  |  | 27 |  |  |
| NFM |  |  |  |  | 15 |  |  |
| charitable |  |  |  |  | 50 |  |  |
| Misc. |  |  |  |  |  | 0 | 349 |
| **TOTAL OTHER** |  |  |  |  | **92** | **0** | **349** |
|  |  |  |  |  |  |  |  |
| **TOTAL ALL EXPENSES** |  |  |  |  | **5585** | **4703** | **5537** |
|  |  |  |  |  |  |  |  |
| Monthly Income | 2926 | 51% | 2818 | 49% | -5744 | -5744 | -5744 |
| Disposable Income |  |  |  |  | **159** | **1041** | **207** |

6

Applying Folkerts' proportionate income percentage, to the disposable income calculation under either actual expenses or the most current Standardized expenses, results in net disposable income for him in the range of $81 to $106/month. After taking into account the administrative expenses, including attorney and trustee fees, as well as payment on priority and unsecured obligations, there is marginal disposal income available to pay general unsecured creditors.

The UST points to other facts that demonstrate Folkerts' chapter 7 case is abusive. Multiple purchases and transfers of funds between bank accounts occurred very near to the time Folkerts decided to file bankruptcy.[5] He obtained a loan which was used to make substantial payments on installment accounts and his home mortgage. Insurance proceeds were received and used to make repairs to the home. Prior to the petition date he took out a loan to purchase a 2012 Jeep Wrangler as a replacement vehicle and a hot tub was also purchased. Folkerts testified that he undertook some of these actions on advice of his attorney. The Court construes such actions as part of permissible exemption planning, or uninformed or unwise decisions in an attempt to avoid a bankruptcy filing, none of which rise to a categorical level of abuse. Equally important is that after he filed bankruptcy Folkerts' took action to reduce his monthly expenses by canceling his life insurance policy and surrendering a camper to a secured creditor which made additional funds available under the disposable income calculation.

Based upon the foregoing, the Court finds there the UST has not met its burden of proof to establish abuse exists in this case under 11 U.S.C. 707(b)(3)(B).

**It is hereby Ordered:** The Debtor's Objection is sustained, and the Motion is denied.

/s/ Anita L. Shodeen
Anita L. Shodeen
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Chapter Case

---

[5] Folkerts' Wife paid for a vacation costing about $5,000 but there is no explanation why paying for such an expenditure is inappropriate for a non-filing spouse.

7